**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SOUTHWEST AIRLINES CO., | |
| Plaintiff, | |
| vs. | Civil Action No. 3:18-cv-00033-G |
| ROUNDPIPE, LLC, CHASE ROBERTS, AND PAVEL YUREVICH, | Honorable Judge A. Joe Fish |
| Defendants | |

**PLAINTIFF SOUTHWEST AIRLINES, CO.'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................................ 1

II.   Factual Background ........................................................................................... 3

     A.  Southwest's Business Model and the Importance of its Website. ................................... 3

     B.  Southwest Website Requires Adherence to its Use Agreement. ...................... 3

     C.  Southwest's Complaint Explains How Defendants Violated the Use Agreement. .......... 4

     D.  Defendants Refused to Cease their Continued Violation of Southwest's Use Agreement. .......................................................................................... 4

III.   Legal Standards .............................................................................................. 6

     A.  Motion to Dismiss for Failure to State a Claim is Improperly Applied. ........................... 6

     B.  The Texas Citizens Participation Act Does Not Apply to this Federal Action. .............. 7

IV.   Argument ........................................................................................................ 8

     A.  Southwest has Sufficiently Pled its Claim under Federal Rule 8. .................... 8

     B.  Defendants Contractual Estoppel Argument Fails to Support a Motion to Dismiss. .......................................................................................... 10

          1.  Applying an Affirmative Defense does not Support a Motion to Dismiss. ............. 11

          2.  The Cease and Desist Letters were not Offers to Contract. ...................... 11

          3.  There are Factual Issues Related to the Contractual Estoppel Defense. .................. 13

     C.  The Texas Citizens Participation Act ........................................................ 14

          1.  The TCPA conflicts with the Federal Rules of Civil Procedures. ........................... 14

          2.  Southwest's Complaint is in Direct Response to Defendants' Admitted Improper Conduct. ........................................................................ 15

V.   Conclusion ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ............................................................7

*Accurso v. Infra-Red Servs., Inc.*,
    No. CV 13-7509, 2016 WL 1273878 (E.D. Pa. Apr. 1, 2016) ........................................11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................1, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................1, 6

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ..........................................................10, 11

*Chapman v. Mitsui Engineering and Shipbuilding Co., Ltd.*,
    781 S.W.2d 312 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ....................................14

*Cheniere Energy, Inc. v. Lofti*,
    449 S.W.3d 210 (Tex. App.—Houston [1st Dist.] 2014) ........................................7

*Clark v. Amoco Prod. Co.*,
    794 F.2d 967 (5th Cir. 1986) ............................................................11

*Cuba v. Pylant*,
    814 F.3d 701 (5th Cir. 2016) ............................................................14

*Davis v. Texas Farm Bureau Insurance*,
    470 S.W.3d 97 (Tex. App.—Houston [1st Dist.] 2015) ........................................14

*Foradori v. Harris*,
    *523 F.3d 477* (5th Cir. 2008) ...........................................................7, 14

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996).............................................................................7, 14

*Harris v. Mississippi Valley State Univ.*,
    899 F. Supp. 1561 (N.D. Miss. 1995).....................................................13

*Herron v. Herron*,
    255 F.2d 589 (5th Cir. 1958) ..........................................................10, 11

*Hollywood Fantasy Corp. v. Gabor*,
    151 F.3d 203 (5th Cir. 1998) ...........................................................................14

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
    818 F.3d 193 (5th Cir. 2016) .............................................................................6

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ...........................................................................6

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .............................................................................8

*Lee v. Tyco Elecs. Power Sys., Inc.*,
    No. 3:04 CV 2260 D, 2006 WL 1722569 (N.D. Tex. June 20, 2006)....................13

*Los Lobos Renewable Power, LLC v. Americulture, Inc*,
    No. 16-2046, 2018 WL 1279752 (10th Cir. Mar. 12, 2018)............................7, 14

*MTrust Corp. N.A. v. LJH Corp.*,
    837 S.W.2d 250 (Tex. App.—Fort Worth 1992, writ denied)................................13

*Motio, Inc.  v. BSP Software, LLC*,
    No. 3:16-cv-00331, 2016 WL 9559916 (N.D. Tex. May 27, 2016)........................9

*Rudkin v. Roger Beasley Imports, Inc.*,
    No. A-17-CV-849-LY, 2017 WL 6622561 (W.D. Tex. Dec. 28, 2017) ........................2, 7, 14

*Smallwood v. Bank of Am.*,
    No. 3:11-CV-1283-D, 2012 WL 32654 (N.D. Tex. Jan. 6, 2012)........................11

*Southwest Airlines Co. v. BoardFirst, L.L.C*,
    No. 3:06-cv-0891, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ........................2

*Southwest Airlines Co. v. Farechase, Inc.*,
    318 F.Supp.2d 435 (N.D. Tex. 2004) ...................................................................9

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) ...........................................................................11

*Sullivan v. Bank of America, N.A.*,
    No. 3:14-cv-3186, 2014 WL 6977093 (N.D. Tex. Dec. 10, 2014)........................9

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002).........................................................................................6

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl.*,
    LLC, 966 F. Supp. 2d 690 (W.D. Tex. 2013) .......................................................11

*United States v. Cent. Gulf Lines, Inc.*,
    974 F.2d 621 (5th Cir. 1992) ..............................................................................11

*Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*,
    735 F. Supp. 2d 503 (N.D. Tex. 2010) ...............................................................6

*YETI Coolers, LLC v. Imagen Brands, LLC*,
    No. 1:16-CV-00578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017) ..............................9

**Statutes**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.......................................................1

Lanham Act, 15 U.S.C. §§ 1051 *et seq* ........................................................9

Texas Citizens Participation Act, Tex. Civ. Prac. Rem. Code § 27.001 *et seq* .................... passim

**Other Authorities**

U.S. Const. Amend. I .................................................................................2, 7, 15

Federal Rules of Civil Procedure Rule 8 ...........................................................passim

Federal Rules of Civil Procedure Rule 12 .........................................................passim

Federal Rules of Civil Procedure 56................................................................13, 14

Federal Rule of Evidence 408......................................................................12

Plaintiff Southwest Airlines Co. ("Southwest") by and through its undersigned counsel, files this Response to Defendants' Roundpipe, LLC, Chase Roberts and Pavel Yurevich (collectively, "Defendants") Motion to Dismiss. Defendants' Motion seeks dismissal of Southwest's Complaint in reliance upon (i) Rule 12(b)(6) of the Federal Rules of Civil Procedure; and/or (ii) the Texas Citizens Participation Act, Tex. Civ. Prac. Rem. Code § 27.001 *et seq,* ("TCPA").  For the following reasons this Court should deny the Defendants' Motion in its entirety:

I. <u>**Introduction**</u>

This is not a free speech case – and Defendants know it. Southwest filed this lawsuit as a result of Defendants' improper and unauthorized use of Southwest's website and trademarks which gave rise to claims for breach of contract, violation of computer fraud statutes, and trademark infringement detailed in Southwest's Complaint. *See* **Complaint** (Attached as Exhibit 1 – **App 1- 24**).  Roundpipe, LLC actually initiated legal proceedings against Southwest when it filed a Declaratory Judgment Action in Utah in November 2017.[1] Just days before Defendants filed this Motion, Roundpipe abandoned its Utah Action. Defendants have filed this Motion seeking dismissal under Rule 12(b)(6) and the TCPA, which has no merit for two reasons:

First, although the Motion purports to rely upon Federal Rule 12(b)(6), the Defendants ignore the fact that Southwest's Complaint – with detailed facts and 23 exhibits – is more than sufficient to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure and the pleading standards cited in *Iqbal* and *Twombly. See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007).  Defendants make no attempt in

---

[1] *See Roundpipe LLC v. Southwest Airlines Co.*, Case No. 2:17-cv-01234-PMW (D. Utah). In the Utah Action, Roundpipe requested a judicial determination that it (i) "has not infringed any of the Southwest Trademarks;" (ii) "has not breached [the Use Agreement]"; and (iii) "has not violated the Computer Fraud and Abuse Act."

their Motion to cite to the requirements of Rule 8(a), "short and plain statement of the claim", or any relevant case law interpreting the standards for a Rule 12(b)(6) motion. Nor can they, as Roundpipe, LLC alleged "an actual and justiciable controversy" with Southwest regarding largely the same claims in its Utah Action. Southwest's well-plead Complaint meets the requirements of Rule 8, therefore defeating Defendants' Motion to Dismiss for Failure to State a Claim.

Second, Defendants' Motion raises free speech arguments under the TCPA – a Texas procedural law - that also fails because the TCPA is not applicable in this Court. *See e.g., Rudkin v. Roger Beasley Imports, Inc.*, No. A-17-CV-849-LY, 2017 WL 6622561, at *3 (W.D. Tex. Dec. 28, 2017) ("[The TCPA] is a procedural statute and thus not applicable in federal court."). Southwest did not sue to infringe Defendants' First Amendment right of free speech. This is not a free speech case but, rather, it is a detailed lawsuit filed by Southwest regarding how Defendants (a) knowingly breached the Use Agreement for the Southwest website;[2] (b) violated computer fraud statutes, as they, without Southwest's authorization, used automated tools to access the Southwest website;[3] and (c) wrongfully used Southwest's famous marks in development of the Southwest Monkey website.[4]

Defendants' Motion has no legal basis as Southwest's Complaint easily satisfies Rule 8 and, Southwest's legal claims are supported by federal court precedent. *See, e.g.*, *Southwest Airlines Co. v. BoardFirst, L.L.C*, No. 3:06-cv-0891, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) (Boyle, J.) (granting summary judgment for Southwest).

---

[2] *See, e.g.*, Complaint at ¶¶ 36-42 & 44-63 (Count I) (App 9 – 15).

[3] *See id.* at ¶¶ 44-51, 101 & 107 (Counts V & VI) (App 12 – 13 and App 20 – 21).

[4] *See id.* at ¶¶ 18-33, 79 & 85 (Counts II, III, & IV) (App 5 – 9 and App 17 – 18).

II.    **Factual Background**

   *A.  Southwest's Business Model and the Importance of its Website.*

Southwest prides itself on being the nation's largest domestic air carrier, while providing its customers with low fares and legendary hospitality. To further its business model, Southwest developed and maintains a privately-owned computer system which includes www.southwest.com (the "Southwest Website "). Through the Southwest Website, Southwest provides fare, route, schedule, and availability data to its actual and potential customers in an interactive format.

Every visit to the Southwest Website provides Southwest with the opportunity to interact with potential and existing customers and to sell its services and generate goodwill. To ensure the highest quality service and to maintain its reputation for legendary hospitality, Southwest controls its exclusive online distribution rights to sell Southwest flights and ancillary services to the general public. Such control ensures that Southwest's customers experience unparalleled service.

   *B.  Southwest Website Requires Adherence to its Use Agreement.*

Southwest makes its websites available for consumers' use subject to certain terms and conditions of use that make it clear that the systems and data displayed thereon are proprietary and owned by Southwest (the "Use Agreement"). *See* Exhibit O to Complaint **(App 54 – 59)**; *see also* Complaint **(App 9 – 10** at ¶ 36). The Use Agreement is available to users via an interactive link on each page of the Southwest Website. Additionally, the home page of the Southwest Website and the Use Agreement conspicuously state that use of the website constitutes acceptance of Southwest's Use Agreement. The Use Agreement is also referenced on every website page shown to Southwest customers as they search, select, and purchase flights on the Southwest Website.

3

The Use Agreement prohibits the use of page-scraping or automated tools to access or monitor any portion of the Southwest Website, its content, and/or its underlying fare databases. *See* Exhibit O to Complaint (**App 54 – 59**). It also prohibits circumventing any measures transmitted to, from, or through the Service and using the Company Information in a manner that suggests an unauthorized association. *Id.*

### C. Southwest's Complaint Explains How Defendants Violated the Use Agreement.

Beginning in late 2017, Defendants offered a commercial service that automatically scraped the Southwest Website for fare information in violation of the Use Agreement. Defendants knew that Southwest disapproved of the services offered by its website, SWmonkey.com. *See* Exhibit R to Complaint (**App  72 – 73**). One online third party wrote on November 22, 2017:

> When I found out about [Swmonkey.com], I actually told the founder that I would not promote it without his permission. I explained that similar sites have been shut down in the past, sent him direct links to those sites…

*See* Exhibit R to Complaint at 4-5 (**App 72 – 73**). Pavel Yurevich, on behalf Defendants, admitted to knowing of earlier improper scraping websites, but continued to operate SWmonkey.com in violation of the Use Agreement. *See* Exhibit S to Complaint (**App 79 – 82**); *see also* Exhibit V to Complaint (**App 88 – 93**).

### D. Defendants Refused to Cease their Continued Violation of Southwest's Use Agreement.

Southwest first sent Defendants an email on November 6, 2017 identifying Defendants' trademark infringement and quoted the terms of the Use Agreement. On November 10, 2017, Southwest sent a cease and desist email to Defendants demanding that Defendants immediately stop: "(1) extracting or scraping Southwest's flight and fare information from its proprietary servers and websites; and (2) publishing this information on the Southwest Monkey website,

through related web applications, or elsewhere." See Exhibit T to Complaint (**App 83 – 84**). Importantly, this email put Defendants on Notice that "Southwest may pursue formal legal action to recover damages for and to stop the unauthorized use of its website." Not receiving a timely response, Southwest sent a follow up email on November 15, 2017 reiterating its demands. *See* Exhibit U to Complaint (**App 85 – 87**).

Defendants' first formal response through their attorney occurred on November 20, 2017. Defendants' demanded a "goodwill" payment to cease their activity. Southwest responded that same day rejecting the "goodwill" offer and made an ultimatum stating: "Your clients either need to shut down the website or prepare to answer our federal lawsuit." *See* Exhibit D, Defendants' Motion (attached as Exhibit 2 – **App 101 - 103**). Southwest continued its demand for Defendants to shut down their website in a communication dated November 21, 2017. *See* Exhibit E**,** Defendants' Motion (**App 104 – 107**).

Later that day, Defendants' counsel emailed Southwest stating that Defendants' website "has been disabled." *See* Exhibit I to Complaint (**App. 41 – 42**). However, the website was not shut down as requested by Southwest. Defendants had merely amended the website.  On November 22, 2017, Southwest sent another cease and desist letter to Defendants asking for the website to be completely taken down to prevent the continued illegal activity. *See* Exhibit J, Defendants' Motion (**App 108 – 122**). Defendants responded with a letter on November 28, 2017 denying any wrong-doing and exclaimed that it "consider[ed] this matter resolved." *See* Exhibit K, Defendants' Motion (**App 123 – 126**). Without further communication, Defendant Roundpipe, LLC filed a declaratory judgment action the next day in Utah Federal Court. *See* **Footnote 1 supra**.

III.   **Legal Standards**

*A.  Motion to Dismiss for Failure to State a Claim is Improperly Applied.*

A motion to dismiss under Rule 12(b)(6) should only be granted if the Plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *see also* Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 556-57. A complaint should not be dismissed because the court simply doubts that the plaintiff can prove the factual allegations contained therein. *Id*. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

Rule 12(b)(6) must be interpreted with Rule 8(a), which sets forth the requirements for pleading a claim for relief in Federal Court. Fed. R. Civ. P. 8(a). Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.; *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard "applies to all civil actions, with limited exceptions").

Because of Rule 8's simplified pleading standard, a "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503, 515 (N.D. Tex. 2010).  A court may dismiss a Complaint only if the Plaintiff has not alleged enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,* 818 F.3d 193, 200 (5th Cir. 2016)*.* Southwest's

6

Complaint meets these standards through its inclusion of detailed facts and exhibits and the lack of any challenge of these allegations by Defendants.

### B. The Texas Citizens Participation Act Does Not Apply to this Federal Action.

The Texas anti-SLAPP statute, the TCPA, has not been applied by Federal courts due to its conflict with the Federal Rules of Civil Procedure. *See Rudkin,* 2017 WL 6622561, at *3 ("TCPA contains procedural provisions setting forth deadlines to seek dismissal, deadlines to respond, and even deadlines for the court to rule, as well as appellate rights, and the recovery of attorney's fees. It is a procedural statute and thus not applicable in federal court."); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (concluding that federal courts apply state common law but federal procedural rules); *accord Foradori v. Harris, 523 F.3d 477, 486* (5th Cir. 2008); *see also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (refusing to apply the D.C. anti-SLAPP statute as it conflicted with FRCP Rule 12); *Los Lobos Renewable Power, LLC v. Americulture, Inc*, No. 16-2046, 2018 WL 1279752, at *7-11 (10th Cir. Mar. 12, 2018) (upholding a district court's decision denying application of New Mexico's anti-Slapp statute in a federal diversity action on the basis that it was purely procedural).

The Texas Legislature enacted the TCPA with the purpose of "encourag[ing] and safeguard[ing] the rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuits for demonstrable injury." Tex.Civ.Prac. & Rem. Code § 27.002. Anti-SLAPP laws have generally been intended to protect "politically and socially active individuals" from lawsuits filed by private interests designed to chill those individuals' First Amendment activities. *Cheniere Energy, Inc. v. Lofti*, 449 S.W.3d 210, 212 (Tex. App.—Houston [1st Dist.] 2014). The TCPA was not intended as a shield to be used by

individuals running a corporate enterprise to protect themselves from a lawsuit based on improper conduct, such as a breach of Southwest's Use Agreement.

To establish a viable claim under the TCPA "[t]he party seeking dismissal of a legal action under the TCPA must show by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition or the right of association." Tex. Civ. Prac. & Rem.Code § 27.005. Here, the causes of action sought to be dismissed relate to Defendants' admitted conduct of breaching the Use Agreement by scraping the Southwest Website to obtain Southwest's fare data. Defendants' unauthorized conduct is not speech.

If a defendant demonstrates, by a preponderance of the evidence, that it has a viable claim under the TCPA, the court may not dismiss a legal action under this section if the plaintiff establishes, by clear and specific evidence, a prima facie case for each essential element of its claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Here, the Defendants do not deny their conduct breached the Use Agreement. *See e.g.*, Complaint at ¶¶ 55-57 (**App 14**). Defendants' failure to deny any breach defeats any contrived dismissal under the TCPA.

## IV.   Argument

### A.   *Southwest has Sufficiently Pled its Claim under Federal Rule 8.*

Defendants do not dispute that Southwest has pled the essential elements for all six causes of action with the required specificity to provide notice to the Defendants. Defendants ignore the purpose of the rule testing sufficiency of factual allegations and, instead, raise improper legal arguments to the Court. But, in a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  All six of Southwest's causes of action easily meet the requirements of Rule 8.

*Contract Claim*: This Court cannot dismiss Southwest's contract claim (Count 1) because the Complaint identifies the existence of a valid contract, Use Agreement, and explains how the Defendants knowingly breached the agreement (automated scraping tools) in a way that caused damage to Southwest.  *See, e.g. Sullivan v. Bank of America, N.A.*, No. 3:14-cv-3186, 2014 WL 6977093, at \*2-3 (N.D. Tex. Dec. 10, 2014) (Fish, J.).

*CFAA and THACA Claims*: This Court cannot dismiss Southwest's claims for violation of the CFAA (Count 5) or THACA (Count 6) because the Complaint sufficiently alleges that Defendants accessed the Southwest website – without authorization or consent from Southwest – and caused losses covered by each statute.  *See, e.g., Motio, Inc. v. BSP Software, LLC*, No. 3:16-cv-00331, 2016 WL 9559916, at \*16 (N.D. Tex. May 27, 2016) (denying motion to dismiss CFAA claim); *Southwest Airlines Co. v. Farechase, Inc.*, 318 F.Supp.2d 435, 438-39 (N.D. Tex. 2004) (denying motion to dismiss CFAA claim where complaint alleged defendant's software improperly accessed data from Southwest.com through "a robot, spider, or other automated scraping device").

*Trademark Claims*: This Court also cannot dismiss Southwest's trademark claims - for unfair competition, trademark infringement, and dilution under the Lanham Act – because the Complaint sufficiently alleges proof of ownership, registration and shows exemplar images of how Defendants used the famous marks on their website without authorization.  *See, e.g.*, *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, at \*1-2 (W.D. Tex. May 18, 2017).

Through their Motion, Defendants make no real attempt to challenge the sufficiency of Southwest's Complaint – nor do they cite to any relevant case law to support the Rule 12(b)(6) motion to dismiss. Instead, Defendants construct a strawman by raising their own breach of

contract claim against Southwest which does not pertain to a 12(b)(6) motion to dismiss and attempt to separate their conduct into two phases (i) their conduct in operating a commercial website, Original SWMonkey.com that scraped fare data from Southwest.com and (ii) their conduct after amending the website, Disabled SWMonkey.com. Much of Defendants' Motion suggests that the Disabled SWMonkey.com does not give rise to a legal cause of action. But, as the Defendants and their counsel should well know, a Rule 12(b)(6) motion to dismiss is not the appropriate vehicle to raise fact issues for the Court. Even if this Court weighed the parties' factual dispute at this stage, the Defendants' website should be viewed as a single commercial forum used to exploit Southwest's trademarks and violate the terms of Use Agreement in order to attract customers and make a profit. Simply purporting to have stopped the improper conduct does not suffice to argue that Southwest has not pled a claim for which relief can be granted.

### B.  Defendants Contractual Estoppel Argument Fails to Support a Motion to Dismiss.

Moving further from the purpose of Rule 12(b)(6), Defendants' eschew the ordinary requirements for a motion to dismiss and instead focus on their affirmative defense of contractual estoppel. First, contractual estoppel is an affirmative defense, which is an improper ground on which to base a motion to dismiss. *Herron v. Herron*, 255 F.2d 589, 590 (5th Cir. 1958) (finding reversible error when the district court granted a motion to dismiss based on the defendant's pleading of an affirmative defense); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (stating "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid"). Second, Southwest's numerous cease and desist letters were not offers to contract but demands to cease illegal activities. Defendants provide no legal support that a cease and desist letter constitutes an offer to enter into a contract.  Finally, there was no attempt by Defendants to argue that the claims were insufficiently pled.

### 1.   Applying an Affirmative Defense does not Support a Motion to Dismiss.

A motion to dismiss under 12(b)(6) is grounded in the sufficiency of the complaint. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (stating "[t]his court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts"). Defenses or other facts outside the complaint are not relevant to an inquiry on whether a complaint should survive a 12(b)(6) motion. *See, e.g., Herron* 255 F.2d at 590; *Brownmark Films, LLC,* 682 F.3d at 690. Defendants argue a unilateral contract was entered into between the parties when Defendants amended the website. According to Defendants, the contract estops Southwest from bringing claims related to the pre-amended website. This argument is simply an affirmative defense by which Defendants have the burden of proof. *See United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 629-30 (5th Cir. 1992). This is not appropriate to support a 12(b)(6) motion. *See U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl.*, LLC, 966 F. Supp. 2d 690, 697 (W.D. Tex. 2013) (discussing the limited circumstances in which an affirmative defense successfully dismisses a claim under Rule 12(b)(6) stating "a court may dismiss a claim under Rule 12(b)(6) if a successful affirmative defense appears clearly on the fact of the pleadings…the validity of the affirmative defense must essentially be unquestionable") (international quotations omitted) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) and *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2012 WL 32654, at *2 (N.D. Tex. Jan. 6, 2012)).

### 2.   The Cease and Desist Letters were not Offers to Contract.

The cease and desist letters do not constitute an offer to contract. Defendants cite non-binding and irrelevant case law to support their position. The Defendants extensively discuss *Accurso v. Infra-Red Servs., Inc.*, No. CV 13-7509, 2016 WL 1273878, at *4 (E.D. Pa. Apr. 1,

11

2016). In *Accurso*, the court was not deciding a motion to dismiss, but ruling on a motion *in limine*. *Id.* at 1. The document in question was an undated, handwritten letter the plaintiff wrote to the defendants in which he proposed terminating a business relationship. *Id.* at 4. In exchange for the defendants' agreement not to contact specified customers of the business, he would receive monetary compensation and the ability to keep a list of some customers. *Id.* The court found that the letter was an offer to settle and therefore inadmissible at trial under Federal Rule of Evidence 408. *Id.* There is no plausible application of *Accurso's* inadmissibility finding to the alleged contract at issue in the instant case.

Southwest's cease and desist communications made no promises. Rather, the communications attempted to stop the Defendants from engaging in conduct contrary to Southwest's rights. Southwest takes these rights seriously and enforces its rights, especially those rights related to website scraping in violation of its Use Agreement. Southwest advised Defendants that if the website was not taken down Southwest would sue them in Federal Court. The website is still active today.

Defendants cite to various passages of email communications between the parties to support their erroneous position, but it is clear that these citations make no promises. At most, the passages assert that Southwest would sue if the improper conduct did not cease, including operation of the website. It does not follow that Southwest promised not to initiate legal proceedings if Defendants ceased engaging in their conduct. Or, as is the case here, continued to maintain their website. There was simply no contract or any offer to contract in any of Southwest's cease and desist letters.

### 3.  **There are Factual Issues Related to the Contractual Estoppel Defense.**

While Defendants' style their Motion as one to Dismiss, it reads as though it is a Motion for Summary Judgment. A simple reading of the emails attached to the complaint indicate that factual issues exist that would not support a finding of summary judgment for Defendants. For example, contrary to Southwest's request, Defendants did not cease using www.swmonkey.com. Instead, Defendants amended the website. The impact of the amended website on Southwest's pending claims is a factual issue.[5] Material factual issues will defeat a motion for summary judgment. *See* Fed. R. Civ. P. 56(a); *Lee v. Tyco Elecs. Power Sys., Inc.*, No. 3:04 CV 2260 D, 2006 WL 1722569, at n. 1 (N.D. Tex. June 20, 2006) (stating "[u]nlike a motion to dismiss, which, with some exceptions, is decided only on the contents of the complaint, in deciding this summary judgment motion the court goes beyond the pleadings and considers summary judgment evidence."); *see also Harris v. Mississippi Valley State Univ.*, 899 F. Supp. 1561, 1566 (N.D. Miss. 1995) (Holding "[i]n considering a motion to dismiss, the Court's inquiry is limited to the contents of the pleadings… In contrast, a motion for summary judgment goes beyond the pleadings and tests the sufficiency of the evidence a party can produce in support of those issues on which it will bear the burden of proof at trial").

Furthermore, Defendants' "evidence" establishes Defendants rejected Southwest's alleged offer by proposing a counteroffer in their November 21, 2017 email to Southwest's Counsel asking for a "nominal" payment to end the matter. Under Texas law, a counter-offer operates as a rejection of the original offer and the original offer cannot then be subsequently accepted by the offeree. *See generally MTrust Corp. N.A. v. LJH Corp.*, 837 S.W.2d 250, 254

---

[5] Defendants' argument implies Southwest did not demand they take down the entire website. The website is still active. The facts clearly indicate Southwest demanded the website be taken down; tending to show that the alleged "contract" was not in fact completed by Defendants' website amendment.

(Tex. App.—Fort Worth 1992, writ denied); *Chapman v. Mitsui Engineering and Shipbuilding Co., Ltd.*, 781 S.W.2d 312, 316 (Tex. App.—Houston [1st Dist.] 1989, writ denied); *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 208 (5th Cir. 1998) (discussing Texas law); *Davis v. Texas Farm Bureau Insurance*, 470 S.W.3d 97, 103-04 (Tex. App.—Houston [1st Dist.] 2015). Defendants have not put forth any evidence that Southwest accepted this counteroffer and the evidence establishes Southwest rejected the offer in writing on November 21, 2017.

### C. *The Texas Citizens Participation Act*

#### 1. <u>The TCPA conflicts with the Federal Rules of Civil Procedures.</u>

The TCPA is a procedural statute that conflicts with the Federal Rules of Civil Procedure and has been found inapplicable in Texas federal courts. The TCPA provides for a pre-trial motion to dismiss claims subject to its coverage, establishes time limits for consideration of such motions to dismiss, grants a right to appeal a denial, and authorizes the award of attorneys' fees if a claim is dismissed. This creates no substantive rule of Texas law; rather, the TCPA is a procedural mechanism for speedy dismissal of a meritless lawsuit that infringes on certain constitutional protections. *See Cuba v. Pylant*, 814 F.3d 701, 719 (5th Cir. 2016) (Graves, dissenting). The "TCPA … is a procedural statute and thus not applicable in federal court." *Rudkin,* 2017 WL 6622561, at *3; *see also Gasperini,* 518 U.S. at 427 (Federal courts apply state common law but federal procedural rules); *accord Harris*, 523 F.3d at 486; *Los Lobos Renewable Power, LLC*, 2018 WL 1279752, at *7-11 (holding that New Mexico's anti-Slapp statute was purely procedural and therefore inapplicable in federal court).

The TCPA directly conflicts with the Federal Civil Procedural Rules governing pre-trial dismissal, namely Federal Rules 12 and 56. *See Rudkin*, 2017 WL 6622561, at *3 (stating that the TCPA "provisions conflict with Rules 12 and 56, rules well within Congress's rulemaking authority"). Since the TCPA is procedural law that directly conflicts with federal procedural

14

rules, it is inapplicable in Federal Court and cannot be the basis for Defendants' Motion to Dismiss.  So the pending Motion should be denied.

### 2.   Southwest's Complaint is in Direct Response to Defendants' Admitted Improper Conduct.

Defendants must demonstrate by a preponderance of the evidence that the Complaint is based on Defendants' exercise of the right of free speech. Southwest's claims for breach, under Counts 1 and 6 are directly related Defendants' services that utilized Southwest's fare system in violation of Southwest's Use Agreement. Defendants have admitted to the activities complained of under both counts. *See* Exhibit S to Complaint (**App 79 – 82**); *see also* Exhibit V to Complaint (**App 88 – 93**); and Exhibit 2 (**App 128 at ¶ 13**). It is therefore clear these counts are not raised solely in response to Defendants "exercise of free speech" and thus, Defendants have failed to meet their burden.

Defendants' brief spends a considerable amount of space contending that their amended website is simply a forum for complaining about Southwest. However, Counts 1 and 6 relate to the admitted breaches of the Use Agreement. Defendants offer no support for their position they can amend a website, remove improper content and avoid a lawsuit under the TCPA. This is not the purpose of the Act. Defendants have not made a viable argument under the TCPA to necessitate the dismissal of Southwest's complaint.  So the pending Motion should be dismissed.

### V.   Conclusion

Southwest has valid claims for breach of the Use Agreement, trademark infringement, and computer security. Defendants' reliance on the affirmative defense of contractual estoppel is improper and numerous factual issues relate to the defense. Further, Counts 1 and 6 are related to Defendants' conduct wholly unrelated to any exercise of Defendants' First Amendment right to free speech.  For the forgoing reasons, Southwest requests that the Court deny the Motion.

Dated: March 27, 2018

**POLSINELLI PC**

By: /s/Michael D. Pegues
Michael D. Pegues
attorney-in-charge
Texas Bar No.: 15730600

POLSINELLI, PC
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
(214) 661-5587

ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES CO.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on March 27, 2018.

*/s/Michael D. Pegues*
Michael D. Pegues