IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SOUTHWEST AIRLINES CO., <br><br> Plaintiff, <br><br> vs. <br><br> ROUNDPIPE, LLC., CHASE ROBERTS, and PAVEL YUREVICH, <br><br> Defendants. | Civil Action No. 3:18-cv-00033-G <br><br> **DEFENDANTS' REPLY BRIEF TO THEIR MOTION TO DISMISS** <br><br> Honorable Judge A. Joe Fish |

Defendants, Roundpipe, LLC, Chase Roberts, and Pavel Yurevich (jointly "Roundpipe") submit this reply brief in support of their Motion to Dismiss (Dkt #17).

**I.   The TCPA Requires Dismissal of Southwest's State-law Claims**

   **A.   The TCPA is enforceable in federal court**

Southwest argues that the TCPA "has not been applied by Federal Courts" and has been found "inapplicable in Texas federal courts" (SW Opp. pp. 7, 14) but fails to acknowledge the many instances when it ***has*** been applied. *Khalil v. Mem'l Hermann Health Sys.*, Civil Action No. H-17-1954  (S.D. Tex. Oct. 30, 2017); *Banik v. Tamez*, Civil Action No. 7:16-CV-462  (S.D. Tex. Apr. 4, 2017); *Vu v. Vu*, Civil Action No. H-16-0366  (S.D. Tex. Jun. 3, 2016); *La'Tiejira v. Facebook, Inc.*, Civil Action No. H-16-2574  (S.D. Tex. Aug. 7, 2017); and *Walker v. Beaumont Indep. Sch. Dist.*, Civil Action No. 1:15-CV-379  (E.D. Tex. March 24, 2016).

In support of its argument, Southwest cites to a dissenting opinion in *Cuba v. Pylant*, 814 F.3d 701, 719 (5th Cir. 2016) (Graves, dissenting) and to the *Rudkin* case which acknowledges: "the Fifth Circuit has declined to resolve these questions with regard to the TCPA." *Rudkin v. Roger Beasley Imports, Inc.*, A-17-CV-849-LY,  4  (W.D. Tex. Dec. 28, 2017).

Because the Fifth Circuit has previously ruled on cases involving anti-SLAPP statutes and has yet to hold that the TCPA is inapplicable in federal court, Roundpipe urges the Court to apply the TCPA in this case. *Khalil*, Civil Action No. H-17-1954 at 10 ("Although the Fifth Circuit has not decided this issue, its previous assumption that the Act applies in federal court and its application of the similar Louisiana anti-SLAPP statute are persuasive.") and *Banik*, 2017 WL 1228498, at *2 (S.D. Tex. Apr. 4, 2017) ("Since the Fifth Circuit has previously ruled on state anti-SLAPP statutes, and Plaintiff has not identified any contrary precedent in this Circuit, this Court has determined that the TCPA should apply in this case.").

Southwest offers no substantive analysis of the applicability of the TCPA in this case beyond simply citing some language from the dissenting opinion in *Cuba* and the *Rudkin* opinion.

In contrast, the First Circuit's analysis of Maine's anti-SLAPP statute provides a good roadmap. *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010). Its analysis begins by noting that to get to the "potential rub" in the relationship between the Federal Rules of Procedure and the state law, the courts now ask if the federal rule is "sufficiently broad to control the issue before the court." *Id*. at 86 (*citing Shady Grove Orthopaedic Assocs. P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1451 (Stevens, J., concurring)). In answering this question, the Court stated: "The critical question is not 'whether the state law at issue takes the form of what is traditionally described as substantive or procedural,' but rather 'whether the state law actually is part of a State's framework of substantive rights or remedies.' [Shady Grove, 130 S.C.] at 1449." *Id*. at 87.

Applying these principles, the Court noted that Rules 12(b)(6) and 56 are not so broad as to cover the issues within the scope of the anti-SLAPP statute. "To use the language of *Shady Grove*, Rules 12 and 56 do not 'attempt[ ] to answer the same question,' *Shady Grove*, 130 S.Ct.

at 1437, nor do they 'address the same subject,' *id*. at 1440, as [the Maine statute]." *Id*. at 88. The Court stated that Rules 12(b)(6) and 56 do not purport to apply only to suits challenging the defendants' exercise of their constitutional petitioning rights and that Maine itself has general procedural rules which are the equivalents of Fed.R.Civ.P. 12(b)(6) and 56. This supports the view that Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities. *Id*. The analysis is no different for the TCPA.

Whereas Rule 12(b)(6) tests the sufficiency of the complaint and Rule 56 creates a process for securing judgment without a trial, the TCPA serves an entirely distinct function of encouraging and safeguarding "the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." TEX. CIV. PRAC. REM. CODE § 27.002.

The *Godin* court went on to consider the substantive aspects of the Maine anti-SLAPP statute, including the burden shifting imposed by the statute.[1] The TCPA imposes similar burden-shifting requirements. Once the moving party establishes the applicability of the TCPA, the burden is on the party bringing the action to establish a prima facie case for each essential element of the claim in question. *Id*. at § 27.005(c).

The *Godin* court dismissed concerns about the potential for a dispositive ruling without affording discovery, noting that the Maine statute allows the court to order that specific

---

[1] "[I]t is long settled that the allocation of burden of proof is substantive in nature and controlled by state law. *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Am. Title Ins. Co. v. E.W. Fin. Corp.*, 959 F.2d 345, 348 (1st Cir.1992)." *Godin*, 629 F.3d at 89.

discovery be conducted. Similarly, the TCPA also states that the Court "may allow specified and limited discovery relevant to the motion." *Id*. at § 27.006(b).

In summing up its analysis, the *Godin* court noted that there is no indication that Rules 12 and 56 were intended to "occupy the field" with respect to pretrial procedures aimed at weeding out meritless claims. *Godin*, 629 F.3d at 91. And, that applying the statute in federal court would best serve the twin aims of *Erie*: discouragement of forum shopping and inequitable administration of the laws. *Id*. Noting the burden shifting and the opportunity for an attorneys' fee award, the court stated: "Declining to apply [the Maine statute] in federal court would thus result in an inequitable administration of justice between a defense asserted in state court and the same defense asserted in federal court" and that "the incentives for forum shopping would be strong." *Id*. at 92. This concern is heightened here because the TCPA not only ***requires*** the Court to award court costs, reasonable attorneys' fees, and other expenses, whereas under the Maine statute the attorney fee award is discretionary (*see* Me.Rev.Stat. tit. 14, § 556 ("If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees")), the TCPA also requires the court to award a sanction sufficient to deter the party who brought the legal action from bringing similar actions against others. TEX. CIV. PRAC. REM. CODE § 27.009(a).

Thus, if the Court is inclined to rule on the applicability of the TCPA in federal court, Roundpipe urges that it follow the analysis of the First Circuit and find that the TCPA applies.

### B.     Southwest has not met its burden under the TCPA

The TCPA sets out a two-step inquiry when a party moves to dismiss. "The movant has the initial burden to show, by a preponderance of evidence, that the activity that forms the base of the claim against him is protected by the statute—that is to say, that the suit arises from the movant's exercise of his right to free speech, association, or petition." *Cuba v. Pylant*, 814 F.3d

4

701, 711 (5th Cir. 2016). Once that burden is met, the court "must dismiss unless the party opposing dismissal can point to 'clear and specific evidence' that establishes a prima facie case for each essential element of his claim." *Id.* Southwest offers nothing in response to the e-mail evidence showing that the present lawsuit was filed in response to content posted by Roundpipe on the Disabled SWMonkey.com. Instead, Southwest jumps to the next step and begins defending its claims. Thus, Southwest has conceded the applicability of the TCPA in this case.[2]

Southwest offers no specific arguments to establish a prima facie case for each essential element of its claims; instead, it merely points the court to the pleadings. The application of Southwest's state-law claims against the Disabled SWMonkey.com and Roundpipe's defenses to those claims against the Original SWMonkey.com is discussed in Roundpipe's opening brief and will not be repeated here.

## II.     All of Southwest's Claims Against Roundpipe Should be Dismissed

Southwest argues that Roundpipe's assertion of a unilateral contract is an affirmative defense and, as such, is not properly considered in a 12(b)(6) motion to dismiss, citing *Herron* and *Brownmark Films*. In *Herron*, the Fifth Circuit reversed a grant of a motion to dismiss without converting it to a motion for summary judgment because the appellant did not have notice or opportunity to examine a material fact to the underlying claim. *Herron v. Herron*, 255 F.2d 589 (5th Cir. 1958). Thus, *Herron* does not preclude consideration of Roundpipe's arguments. In *Brownmark Films*, the Seventh Circuit acknowledged that courts should "usually refrain" from granting Rule 12(b)(6) motions on affirmative defenses, but stated that "when all relevant facts are presented" the court may properly dismiss a case. Indeed, it went on to affirm

---

[2] As such, Southwest does not contest that the Disabled SWMonkey.com relates to a "service in the marketplace" and pertains to "a judicial proceeding." *See* TEX. CIV. PRAC. REM. CODE §§ 27.001(7)(E) and 27.006(b)(2).

5

the trial court's grant of a Rule 12(b)(6) motion in a copyright case based on the affirmative defense of fair use. *Brownmark Films, LLC v. Partners*, 682 F.3d 687, 689 (7th Cir. 2012).[3]

Roundpipe acknowledges that it relies on matters outside the pleadings. Rule 12 provides that if matters outside the pleadings are presented to and not excluded by the court, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Thus, Roundpipe requests that the Court exercise its discretion and convert Roundpipe's motion to one for summary judgment. Rule 12(d) requires only that the non-movant be given notice that "the district court could treat the motion as one for summary judgment, not [whether] the court would in fact do so." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990).

Southwest cannot complain that it did not receive adequate notice, as "[a] non-moving party receives adequate notice when it is aware that the movant has placed matters outside the pleadings before the district court for its review." *Guiles v. Tarrant Cnty. Bail Bond Bd.*, 456 F. App'x 485, 487 (5th Cir. Jan. 5, 2012). "A party is on notice of the possibility that a court may convert a motion to dismiss into a motion for summary judgment ten days after a party submits evidence outside of the pleadings if the evidence is not excluded by the Court." *Rainwater v. 21st Mortgage Corp.*, 2010 WL 1330624, at *7 n. 11 (E.D. Tex. Feb. 25, 2010) (*citing Wash. v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990)). Indeed, Southwest concedes that Roundpipe's motion "reads as though it is a Motion for Summary Judgment" (Dkt #25, p. 13) and proceeds to address alleged factual issues.

---

[3] In *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 629-30 (5th Cir. 1992), also relied upon by Southwest, the court refused to dismiss the claim based on the affirmative defense, not because it was raised in a Rule 12(b)(6) motion, but because the party asserting the defense presented no evidence supporting the defense.

Southwest argues that "[t]he impact of the amended website on Southwest's pending claims is a factual issue." *Id*. Southwest confuses legal and factual issues. The content of the Original SWMonkey and the Disabled SWMonkey are not in dispute. (In fact, Southwest has not proffered any evidence disputing any of the evidence submitted by Roundpipe.) While the parties may argue over the legal effect of the two websites on Southwest's claims, the facts underlying those claims are not in dispute.

In response to Roundpipe's claim that Southwest entered into a unilateral contract when Roundpipe disabled the Original SWMonkey.com, Southwest argues that Roundpipe did not take down the entire website. The only reasonable interpretation of Southwest's demand letters was that Southwest was looking for Roundpipe to do two things: not infringe its trademarks and not scrape data from its website. Southwest's present assertion that it was demanding that Roundpipe take down the entire website is merely a litigation-induced attempt to justify its strong-arm tactics in suppressing Roundpipe's free-speech rights.

To be sure, Southwest did demand on at least two occasions that Roundpipe "shut down" its website (Appendix 16, 19); however, this cannot reasonably be construed as a demand to not have any content on the domain www.swmonkey.com.

The only reason the Disabled SWMonkey.com is still at issue is that it is what caused this lawsuit to be filed, as these statements from Southwest's in-house counsel—made after the Original SWMonkey.com was disabled—establish:

- "[P]lease know that the entire website -- including the recently revised FAQ -- needs to come down." (Nov. 21 e-mail, Appendix, 32)

- "The site needs to come down completely without any commentary about how to violate our terms and conditions." *Id*.

- "Southwest is surprised and disappointed that your clients are not willing to completely shut down the Website. It is not clear to Southwest why your clients are

7

refusing to comply with our demand given the obvious legal risks here." (Appendix, 40, ¶ 1)

The Disabled SWMonkey.com has no relevance to any of Southwest's claims. Southwest argues: "Simply purporting to have stopped the improper conduct does not suffice to argue that Southwest has not pled a claim for which relief can be granted." However, Southwest has not disputed that Roundpipe has disabled the offending functionality of SWMonkey.com and is no longer using it in connection with a commercial enterprise. Thus, summary judgment on all of Southwest's claims regarding the Disabled SWMonkey.com is proper. Southwest's speculation (based on a hearsay report in a third-party travel blog) that Roundpipe may re-launch its service does not breathe life into its claims.

Southwest argues that its cease-and-desist letters made "no promises." However, the only reasonable interpretation of the many e-mails from Southwest's lawyer was that the only way to avoid being sued was to comply with his demands. (*See* Southwest's e-mails as outlined in Roundpipe's memo in support of its Motion to Dismiss, Dkt #24, pp. 14-15) Counsel was specific about what conduct he required and the deadline by which it was to be completed. Roundpipe's principals, after carefully weighing their options, elected to comply by the deadline to thereby avoid a lawsuit. It was only after Southwest's lawyer saw the content of the Disabled SWMonkey.com that he decided to renege on his promise and again use the threat of litigation to extract more out of Roundpipe. "Any disagreement about the meaning of the contract does not render it ambiguous; instead, the contract must be susceptible to two or more *reasonable interpretations*." *Certain Underwriters At Lloyd's of London v. Sterling Custom Homes, Inc.*, No. 16-50892, 5 (5th Cir. Aug. 24, 2017) (internal quotes and cites omitted) (emphasis added).

Southwest argues that any offer it made was rejected by a Roundpipe counteroffer on November 21, 2017. Southwest does not cite to the record for this allegation, and Roundpipe is

8

aware of no such proposal made on November 21. Roundpipe did suggest on the morning of November 20, that as a token of goodwill, Southwest pay a nominal sum to Roundpipe "to alleviate the pain of [Roundpipe] having to simply walk away from this project." This request was memorialized later that morning in an e-mail to Southwest's counsel. (Appendix, 20). To be sure, Roundpipe was attempting to get Southwest to sweeten the deal; however, this does not qualify as a counteroffer. "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *MRC Permian Co. v. Three Rivers Operating Co.*, No. 05-14-00353-CV, 18 (Tex. App. Aug. 5, 2015) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 59, ill. 2). Nothing about Roundpipe's request for a good-will payment could be construed as accepting or rejecting Southwest's offer; thus, it does not meet the definition of a counteroffer.

Even if Roundpipe's request for payment could be construed as a counteroffer, it was immediately rejected by Southwest, which then restated its demands. *See* Southwest's e-mail of November 20, 2017:

> [W]e are not interested in a "goodwill" payment to your clients. Your clients either need to shut down the website or prepare to answer our federal lawsuit. Please respond before end of day on Tuesday, November 21 so I can update my internal clients and outside counsel.

(Appendix, 20) This was unlike a typical contract negotiation when parties refine an agreement through multiple iterations of back-and-forth bargaining. The terms of the unilateral contract offered by Southwest never changed, despite Roundpipe's efforts. Southwest should not now be heard to argue that the deal its lawyer forced upon Roundpipe "at gunpoint" is not enforceable.

### III. Conclusion

On November 21, 2017, Roundpipe disabled its website and posted that, in the couple weeks it was online, it saved its customers $550 and made $45. A $550 erosion of Southwest's

9

substantial profits would not justify a phone call to outside counsel, let alone the present filing. Southwest's motivation for litigating is clear—it is seeking to curtail Roundpipe's free-speech rights. This is the very activity the TCPA was passed to address. Roundpipe should not have to tolerate it, and this Court should not tolerate it. Southwest's suit should be dismissed and Southwest should be ordered to pay costs, reasonable attorneys' fees, and a substantial sanction.

DATED: April 10, 2018

> By: *s/ Charles L. Roberts*
> Charles L. Roberts *(pro hac vice admission)*
> Utah Bar No. 5137
> *Attorney in Charge*
> **Wasatch-IP, A Professional Corp.**
> 2825 E. Cottonwood Parkway, Suite 500
> Salt Lake City, Utah 84121
> Telephone: 801-292-5300
> Facsimile: 801-506-6699
> *croberts@wasatch-ip .com*
>
> *Attorney for Defendants*
> *Roundpipe, LLC, Chase Roberts, and Pavel Yurevich*

**CERTIFICATE OF SERVICE**

On April 10, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Charles L. Roberts